**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JAVIER MUNOZ RUIZ, | : | MOTION TO VACATE |
| Fed. Reg. No. 64683019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| | : | 1:13-CR-229-ODE-JSA-4 |
|         v. | : | |
| | : | CIVIL ACTION NO. |
| UNITED STATES OF AMERICA, | : | 1:17-cv-1856-ODE-JSA |
|     Respondent. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Javier Munoz Ruiz has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 221). Movant seeks to challenge the constitutionality of his convictions and sentences following his guilty plea in the Northern District of Georgia.

I.     Procedural History

On June 14, 2013, Movant and three co-defendants were indicted by a federal grand jury for various drug trafficking and money laundering offenses. (Doc. 31). Movant specifically was charged with conspiracy to possess with the intent, and possession with the intent, to distribute at least five hundred (500) grams of methamphetamine, in violation of 21 U.S.C. §§ 841, 846, and 18 U.S.C. § 2. (*Id.*). Represented by appointed counsel Steven Berne, through an interpreter and having consented to proceed before the undersigned, Movant entered a non-negotiated

guilty plea on May 28, 2014, to both counts. (Docs. 123, 124, 125, 133). After the plea hearing the undersigned entered a report and recommendation ("R&R"), found that Movant's plea was knowing and voluntary and supported by a factual basis, and recommended that the district court accept Movant's plea. (Doc. 125). Movant filed no objections to the R&R, and the district court adopted it and accepted Movant's guilty plea on July 18, 2014. (Doc. 132).

Before sentencing, Movant sent a letter to his attorney and to the Court, in which he claimed that Mr. Berne coerced him into entering the guilty plea by promising that he would receive a sentence well below the statutory mandatory minimum, that he based his guilty plea on that promise, and that but for that promise he would not have entered a guilty plea because he is not guilty. (Doc. 174 at 3). After receiving that letter Mr. Berne filed a motion to withdraw. (Doc. 146).

During the originally-scheduled sentencing hearing on January 6, 2015, U.S. Senior District Judge Orinda D. Evans heard Mr. Berne's argument on his motion to withdraw. (Doc. 174 at 3-4). Mr. Berne told the Court that he had met that morning for a debriefing with Movant, a federal agent, an analyst, and an interpreter in order for Movant to qualify for a safety valve reduction.[1] (*Id.*). During that meeting,

---

[1]    The "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 permit the imposition of a sentence lower than the statutory minimum when five factors are satisfied. The fifth factor is at issue in this case, which requires a

2

however, Movant reiterated what he had stated in his post-plea letter – that the only reason he entered a guilty plea was based on Mr. Berne's pressure on and promises to him, and that he was not guilty of the offenses to which he entered the plea. (Doc. 174 at 3-4). Based on Movant's statements of innocence during the debriefing, Mr. Berne objected to the R&R and asked the Court to reject the undersigned's recommendation to accept Movant's plea.[2]  (*Id.* at 9).

After hearing from both parties and having previously reviewed the record, Judge Evans found that the plea was fully and fairly entered, adopted the undersigned's recommendation over Mr. Berne's objections, and did not allow Movant to withdraw his guilty plea. (*Id.* at 19). Judge Evans did, however, grant

---

defendant to show that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.] . . ."  18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).  "This final factor is a 'tell-all' provision:  to meet its requirements, the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'"  *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) (per curiam) (citations omitted).  "A defendant has the burden of proving his eligibility for relief under § 5C.1."  *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

[2]     Former U.S. District Judge Julie E. Carnes (now presiding as a justice in the Eleventh Circuit) was originally the district judge on this case.  After Judge Carnes had entered the Order accepting Movant's plea, the case was transferred to Senior U.S. District Judge Orinda D. Evans.  (*See* Docket).

3

Mr. Berne's motion to withdraw, gave the courtroom deputy instructions to appoint a new attorney for Movant, and rescheduled the sentencing hearing. (*Id.* at 20-21).

Thereafter, the Court appointed new counsel, Esther Panitch, to represent Movant. (Doc. 152). Following the sentencing hearing on July 7, 2015, Judge Evans sentenced Movant to concurrent 168 months of imprisonment on each count to be followed by supervised release. (Doc. 179). Ms. Panitch filed an *Anders* brief and accompanying motion to withdraw with the Eleventh Circuit,[3] and on February 19, 2016, the Eleventh Circuit affirmed Movant's convictions and sentences and granted Ms. Panitch's motion to withdraw. (Doc. 193).

Movant executed the instant motion to vacate his sentences on May 17, 2017. (Doc. 221). The Court agrees with the Government that the motion is difficult to decipher and will endeavor to liberally construe the motion with the benefit of Movant's reply [Doc. 227].[4] To that end, Movant appears to raise the following claims that Movant's counsel was ineffective, because counsel:[5]

---

[3]    In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court held that if counsel determines that an appeal would be wholly frivolous, counsel should notify the appellate court and request to withdraw.

[4]    For ease of reference and discussion, the Court has re-enumerated and re-ordered some of Movant's grounds for relief.

[5]    In its response, the Government construed some of Movant's allegations to constitute claims that his plea was not voluntary; however, Movant states more than

(1)     misrepresented that Movant would receive a five year sentence if he provided truthful information to the Government as opposed to a ten year sentence if he did not;

(2)     did not tell Movant that the Government would have to prove that he entered into an agreement to possess a controlled substance for distribution, as well as its type and quantity beyond a reasonable doubt;[6]

(3)     caused Movant to agree to a non-negotiated plea agreement rather than the Government's plea offer;

(4)     failed to present evidence at the sentencing hearing that Movant was fair and truthful at the safety valve debriefing;

(5)     failed to argue at sentencing for a minor role reduction;

(6)     failed to present evidence of the harsh conditions of Movant's pretrial confinement;

(7)     failed to argue that Movant has diminished mental capacity; and

---

once that he is *not* challenging the voluntariness of his plea. (*See* Doc. 227 at 3 (¶1(d)), 7 (¶4(d), 11 (¶7(a)(c)), 12 (¶9(a)), 13 (¶10)). Thus, the Court will only analyze Movant's claims as claims for ineffective assistance of counsel. In any event, as discussed further herein, Movant's present self-serving statements would not overcome the strong presumption of the veracity of his sworn statements during the plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007).

[6]     In the motion, Movant claimed that counsel was ineffective for misinforming him that the Government had to prove his knowledge of the *type* of drugs he transported. In his reply, however, Movant "withdraws" that part of the claim, and instead appears to argue that he was not informed that the Government would have to prove the *quantity* of the drugs as part of the elements of the offense. (Doc. 227 at 31-32).

(8)     allowed Movant to receive a sentence above the maximum in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Johnson v. Zerbst*, 304 U.S. 458 (1938), and *Strickland v. Washington*, 466 U.S. 668 (1984).[7]

(Docs. 221, 227).

For the following reasons, the undersigned **RECOMMENDS** that the instant § 2255 motion be **DENIED**.

## II.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum

---

[7]     In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  The Supreme Court in *Johnson v. Zerbst* found that the trial court must ensure that a defendant has properly waived his right to counsel.  *Johnson*, 304 U.S. at 465.  Finally, as will be discussed further *infra*, the Supreme Court's opinion in *Strickland* discusses the standard by which a court should analyze an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. 668.

authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court need not order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below and contrary to Movant's argument, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III. Analysis

A. The Standard For Evaluating Ineffective Assistance Of Counsel Claims

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)

7

(citing *Strickland*, 466 U.S. at 688).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018).  *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course.").  An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992).  *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  The movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59.  Where, as here, alleged ineffective assistance of counsel results in the lapse of a plea offer or the defendant rejecting the plea, the movant must demonstrate that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the movant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the Court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).  *See also Missouri v. Frye*, 564 U.S. 134, 147-48 (2012) (stating that defendants must demonstrate a reasonable probability that but for counsel's ineffective assistance, they would have accepted the earlier plea offer, the plea would have been entered without the prosecution cancelling it or the court refusing to accept it, and the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time).  Movant has demonstrated neither prong of *Strickland*.

     B.    <u>Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.</u>

1.  Counsel's Alleged Lie As To Movant's Potential Sentence And
    Alleged Coercion Which Caused Movant To Enter Into The
    Non-Negotiated Plea

In his first ground for relief, Movant claims that his attorney lied to him by telling him that he would receive five years of imprisonment "if he talked," and ten years if he did not. (Doc. 221 at 15-16). According to Movant, he did not know anything about the type of drug he was transporting or where it was concealed in his vehicle. (*Id.* at 17). Despite his alleged lack of knowledge, however, Movant insists that counsel should have proceeded with the negotiated plea agreement, which would have provided him with a safety valve reduction if he truthfully provided all of his knowledge about the drug trafficking operation. (*See id.* at 17-20).

First, Movant claims that at the time he entered the plea he apparently believed he entered into the negotiated plea agreement for about "57 months" rather than a non-negotiated plea. (Doc. 221 at 20-21; Doc. 227 at 10). Yet at the same time Movant argues that "he strongly believes" that his counsel "did not discuss no [sic] written plea agreement with him[.]" (Doc. 227 at 10). (*See also* Doc. 227 at 17 ("[Movant] thought that by signing the second document during the plea hearing, he was signing a plea agreement."). Just as contradictorily, Movant argues that he entered a guilty plea because his counsel "lied" to him and told him that he would

receive five years, yet he then claims he was "convinced" to plead guilty by "[f]ellow inmates in the USP." (Doc. 221 at 16). Movant cannot have it both ways.

The Supreme Court has held that:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Movant's conclusory and self-serving allegations are "wholly incredible" in the face of this record, as they are belied by his own sworn statements, his counsel's and the Government's statements, and the Court's findings. The plea hearing transcript reveals that Movant voluntarily entered a guilty plea with a full understanding of the charges and the consequences. (Doc. 133).

Indeed, at the beginning of the plea hearing – while Movant was present and assisted by an interpreter – both Movant's attorney and Government's counsel told the Court that despite various plea offers made by the Government which Movant's counsel conveyed to Movant, Movant elected to proceed without a plea agreement. (Doc. 133 at 6). Movant did not challenge those representations and, in fact, he later

confirmed that there was no plea agreement and that he had not relied on any

promises or representations in exchange for entering his plea:

| | |
|---|---|
| THE COURT: | Now, I am told that there is no guilty – excuse me – there is no plea agreement.  Is that true to your understanding, sir? |
| MOVANT: | *No, there isn't*. |
| THE COURT: | Okay, so are there any promises or representations that you are  aware of or that you are relying on in exchange for your plea of guilty? |
| MOVANT: | *No*. |

(Doc. 133 at 24) (emphasis added).

Nor has Movant demonstrated that but for counsel's erroneous advice he

would have accepted the Government's plea offer and would have been sentenced

to the five-year sentence his counsel promised "if he talked."  The key phrase here

is "if he talked."  Whether Movant entered into the negotiated plea agreement or

entered the non-negotiated plea as he did, he still would have had to have qualified

for the safety valve reduction by "truthfully provid[ing] to the Government all

information and evidence [he] ha[d] concerning the offense or offenses that were

part of the same course of conduct or of a common scheme or plan" no later than the

sentencing hearing.  18 U.S.C. § 3553(f)(5).  *See also* Doc. 225, Attach. 1 (the plea

offer) at 6 (providing that if the Government determines that Movant has failed to

comply with the safety valve requirements, or if the Court determines that he fails to meet the criteria, the Government is not required to make the recommendation for the safety valve downward departure).

As a result of both debriefing meetings with the Government, both the Government and the Court concluded that Movant did not truthfully provide all of the information and evidence he knew about the drug trafficking operation because Movant claimed, and still maintains, that he knows nothing and that he could not have told the Government that which he did not know. (*See* Doc. 221 at 17-24; Doc. 227 at 17-19). Movant's story, however, has changed several times.

During the intercepted phone calls between Movant and a co-defendant, Movant first stated (according to the Government, in "code") that he was driving to Atlanta because he was told that the co-defendant wanted to buy a truck. (Doc. 333 at 17; Doc. 174 at 17; PSR ¶ 28; Doc. 190 at 6). When agents interviewed Movant after his arrest, he never indicated that he was selling a truck; instead he stated that he had been delivering furniture to Atlanta and he denied that he knew he was transporting drugs. (PSR ¶ 37; Doc. 133 at 17-18). Then later, during the plea colloquy he (and his attorney) told the Court that he had no material disagreements with the summary of the facts stated by the Government that, *inter alia*, Movant had discussed with a co-defendant "in code" that he was the courier for a drug shipment

13

[Doc. 133 at 17], that Movant lied when he told agents after his arrest that he was delivering furniture to Atlanta [*id.* at 18], and that Movant "knew he was transporting illegal drugs in his truck" [*id.*].  After the plea Movant returned to insisting that he had no guilty knowledge whatsoever that there were drugs in his truck – to the Court, his attorney, and the Government – in the post-plea letter, the first debriefing, and the scheduled sentencing hearing which turned into a hearing about why the Court should not accept Movant's plea and allow Mr. Berne to withdraw.  (Doc. 146; Doc. 174 at 3-4, 6, 18).  Importantly, during that same hearing the Government made it clear that it did not believe Movant was truthful at the first debriefing meeting, with which Judge Evans agreed, finding that:

> I mean it's a big stretch to say that a person would drive up to Atlanta with an extra tank loaded with liquid methamphetamine, turn it in to the drug dealer, and then say oh, I was coming to bring furniture.  I mean it just doesn't fit together.

> It's not likely that the person in Texas that [Movant] was  dealing with would have turned loose of 9.6 kilograms of methamphetamine.  That's a huge amount, very, very valuable.  He wouldn't have turned loose of that given it to [Movant] if [Movant] didn't know what he was carrying.  It's [sic] just strains credibility.

(Doc. 174 at 20-21).

The Court's opinion did not change after Movant altered his story yet another time during the second debriefing and the actual sentencing hearing, where he went back to admitting that he was aware that he was transporting drugs, but continued to

deny that he knew the type or quantity thereof.  (Doc. 190 at 5-7).  On the face of this record, the only statements on which the Court can rely are those Movant made under oath, and his present self-serving conclusory allegations that counsel gave him erroneous advice about his prospective term of imprisonment and/or that he thought he was entering into a plea agreement for a five-year sentence cannot overcome the strong presumption of the verity of his sworn statements.  *See Blackledge*, 431 U.S. at 74; *Daniels v. United States*, Nos. 1:15-CV-2279-AT-JSA, 1:14-CR-156-AT-JSA, 2016 WL 11440070, at *3 (N.D. Ga. Jan. 5, 2016) (quoting *Blackledge* and finding that "Movant cannot overcome the strong presumption of veracity inherent in her solemn declarations before this Court . . . by presenting, as she has done, nothing more than her unsupported assertions that counsel gave her erroneous advice about her prospective term of imprisonment.").

Nothing that Movant sets forth in his motion or the reply indicates that he would change anything he said.  Indeed, despite his admission during the second debriefing that he did, in fact, know that he was transporting drugs, he now again claims that he knows nothing.  Given the large amount of drugs and his statements to the contrary during the plea and the second debriefing, this defies logic.  *See, e.g., United States v. Pollock*, 926 F.2d 1044, 1050 (11th Cir. 1991) (finding the evidence sufficient to sustain the defendant's conviction for possession with the intent to

distribute, noting that "[t]he most significant evidence supporting [the defendant's] knowing possession with the intent to distribute is the large value of the cocaine.  A reasonable jury could conclude that no drug smuggler would entrust a shipment worth $1 million to an outsider."); *United States v. Battle*, 892 F.2d 992, 1000 (11th Cir. 1990) (stating that a drug smuggler is unlikely to put cocaine valued at one million dollars on a plane over which he could exercise no control); *United States v. Cruz-Valdez*, 892 F.2d 992, 1546-7 (11th Cir. 1985) ("[W]e think it reasonable for a jury to conclude that in the course of transporting or distributing millions of dollars' worth of readily marketable marijuana, through channels that wholly lack the ordinary protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders.").

Moreover, Movant pled guilty to both counts of the indictment and acknowledged that the offense conduct outlined at his plea hearing was accurate, which included the fact that he transported approximately nine kilograms, or 9,000 grams, of methamphetamine from Texas to Atlanta.  (Doc. 133 at 16-18, 24-27).  Movant cannot now complain that the facts to which he admitted were used in calculating the Guideline range.  *United States v. Shah*, 263 F. Supp. 2d 10, 20 (D. D.C. 2003).  *See also United States v. Leechman*, 309 F. 3d 377, 383-84 (6th Cir. 2002) (stating that by pleading guilty the defendant waived the right to have the

sentencing factors, including the amount of drugs, proven to a jury beyond a reasonable doubt).

Finally, during sentencing Movant's counsel actually asked for a safety valve reduction, making the same arguments as Movant does here – *i.e.,* that he provided the Government with all of the information he knew – and the Court was not persuaded thereby.  (Doc. 190 at 3, 5-7).  Movant, therefore, cannot demonstrate that even had he moved forward with the plea agreement the Government would have recommended, and/or the Court would have found, that he met the criteria for safety valve relief.  Movant, therefore, has failed to demonstrate that the results of the proceeding would have been different.  *See United States v. Ramirez-Martinez*, 230 F. App'x 936, 937 (11th Cir. 2007) (affirming denial of safety valve relief where the defendant initially told the court that he was involved in a conspiracy with an unnamed uncle and cousin, but later changed his story); *United States v. Brownlee*, 204 F.3d 1302, 1305 (11th Cir. 2000) (affirming the district court's denial of safety valve relief and stating that "[t]he question of whether the information [the defendant] supplied to the government the morning of his sentencing was truthful and complete . . . is a factual finding for the district court."); *United States v. Thompson*, 166 F.3d 794, 800 (7th Cir. 1991) (finding that "the court's assessment that defendants continued to cling to a false version of events and dispute their own

culpability, up to and including the sentencing hearing, is a sufficient basis for refusing to invoke the safety valve provision" because "[d]enying involvement is not the same as lacking useful information"); *Shah*, 263 F. Supp. 2d at 32-33 (denying the defendant's downward departure for alleged cooperation with the Government where during debriefing the defendant denied any knowledge of dealing with the supplier and thus was not truthful). *See also United States v. Salutiano-Hernandez*, 215 F. App'x 935, 937 (11th Cir. 2007) (holding that the district court did not clearly err in denying the defendant a safety valve reduction after determining that the defendant had not truthfully and fully disclosed information within his knowledge when several of his statements were inconsistent with his codefendants' statements). Accordingly, Movant is not entitled to relief in connection with Grounds One and Three of the instant motion.

> 2.   <u>Counsel Was Not Ineffective For Allegedly Failing to Inform Movant That The Government Had To Prove All Of The Elements Of The Offense Beyond A Reasonable Doubt, And *Apprendi* Is Inapplicable Here.</u>

Although Movant claims that he is not challenging the voluntary nature of his plea, he argues that he was never adequately informed that if he went to trial the Government would have to prove all of the elements of the offense – which Movant believes includes proof that he agreed to possess a controlled substance for distribution, and its type and its quantity – beyond a reasonable doubt, and as a result

18

he did not constitutionally waive those rights.  (Doc. 227 at 31).  To the degree that this Court could construe Movant's argument as a claim that counsel was ineffective for failing to inform him that by entering his plea he gave up his right for the Government to prove his guilt beyond a reasonable doubt, Movant's claim fails. Indeed, although he argues that the Court only "cursorily" mentioned those rights, the Court specifically informed Movant that:

> First of all, you have a right to plead not guilty to every charge that is pending against you.  You have the right to persist in that plea of not guilty; in other words, continue to plead not guilty and not change your mind for any reason whatsoever.   If you plead not guilty, you have the right to a speedy and public trial.
>
> That trial you would have the right to have before a jury of citizens and at that trial you would be presumed innocent of the charge or charges against you unless and until at such trial the Government proves your guilt, in other words that you are guilty of the specific offense or offenses that you are charged with and no others.
>
> In order to overcome the presumption of innocence and have you found guilty at trial, the Government will have to prove that you are guilty beyond a reasonable doubt using only competent and admissible evidence.
>
> Beyond a reasonable doubt is a legal term but it essentially means that the evidence introduced at your trial must be of sufficient quality and believability that the finder of fact – and in your case you would have the right for the finder of fact to be a jury – would rely upon such evidence without hesitation in the most important of their affairs.
>
> That means the evidence must be the kind that a jury would use to make a decision on an important matter, not a trivial one such as what

restaurant to have dinner at on Friday night but something much more important and weighty in their lives.

(Doc. 133 at 10-11).  Thus, Movant was, in fact, informed that the Government had to prove its case beyond a reasonable doubt.

During that same colloquy – which Judge Evans found to be "very thorough" [Doc. 174 at 5] – the Government set forth all of the elements it would have to prove in order to find Movant guilty.  (Doc. 133 at 13-14).  And when the Government provided the factual basis for the plea with which Movant and his attorney stated they had no disagreement, the Government specifically stated that it would be able to prove beyond a reasonable doubt at trial that Movant knew that he had transported approximately nine kilograms of methamphetamine.  (Doc. 133 at  18).

Thus, Movant undoubtedly was informed about his right to have the Government prove the case, including the amount and type of drugs, beyond a reasonable doubt.  (Doc. 174 at 5).  That Movant thinks that he should have been told numerous times throughout the colloquy does not change this conclusion.  *See, e.g., United States v. Perez*, 270 F.3d 737, 740-41 (8th Cir. 2001) (holding the defendant's "argument that his guilty plea was not intelligently made because he was not informed that the government would be required to prove quantity beyond a reasonable doubt does not carry the day on the facts of this case which demonstrate that the indictment specified quantity and that [the defendant] understood the nature

20

of the charge."). *Compare United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) (holding the failure of the court to advise the defendant about the reasonable doubt standard did not invalidate his plea where, *inter alia*, he signed a plea agreement that informed him that he was giving up the right to have the burden of proof placed on the government to prove him guilty beyond a reasonable doubt).

Likewise, because Movant admitted the factual basis of nine kilograms of methamphetamine, Movant's argument that his rights were violated under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) also fails. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Following *Apprendi*, the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004) defined "statutory maximum" for *Apprendi* purposes as "the maximum sentence a judge may impose *solely on the basis of the facts . . . admitted by the defendant*" or the maximum a judge may impose without any additional factual findings. *Blakely*, 542 U.S. at 303-04 (emphasis in original). In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court found that the mandatory nature of the Sentencing Guidelines were incompatible with the holdings in *Apprendi* and *Blakely*. *Booker*, 543 U.S. 245.

Movant's admission to the quantity of drugs during the plea colloquy falls squarely within those cases that do *not* violate *Apprendi* and its progeny. *See, e.g., United States v. Navarro-Lenis*, 148 F. App'x 801, 803 (11th Cir. 2005) ("[T]here was no Sixth Amendment violation because, at the plea colloquy hearing, Navarro-Lenis admitted to the facts that were used to reach her offense level of 28. The government's factual proffer, to which Navarro-Lenis agreed, provided that she imported approximately 500 grams of heroin.").

Finally, "an *Apprendi* constitutional error occurs *only* where a defendant is sentenced beyond the statutory maximum for the offense." *United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006) (emphasis in original). The statutory maximum for Movant's crimes is life imprisonment. *See* 21 U.S.C. §§841(b)(1)(A), 846. Because Movant was sentenced to concurrent terms of 168 months of imprisonment, well below the statutory maximum, *Apprendi* is not implicated here. *See United States v. Diaz*, 377 F. App'x 883, 896 (11th Cir. 2010) ("[W]here a defendant's sentence falls below the statutory maximum term of life imprisonment for a conviction under 21 U.S.C. § 841(b)(1)(A), there can be no *Apprendi* error. Here, the jury convicted Diaz of violating § 841(b)(1)(A) in counts one and two, and the court sentenced him to concurrent terms of 160 months of imprisonment. As Diaz's sentence was below the statutory maximum, he cannot

establish that the district court committed plain error."); *Underwood*, 446 F.3d at

1345 ("The maximum term of imprisonment under 21 U.S.C. §841(b)(1)(A)(iii) is

life imprisonment.  Underwood was sentenced to 135 months in prison, well below

the statutory maximum.  In a § 841 case where the defendant's ultimate sentence

falls at or below the statutory maximum penalty in §841(b)(1)(A)(iii), there is no

*Apprendi* error.").  *See also United States v. O'Neil*, 436 F. App'x 960, 963 (11th

Cir. 2011) (holding no *Apprendi* error existed because the defendant was sentenced

to 262 months of imprisonment for his conviction of possession with the intent to

distribute five kilograms of cocaine on board a United States vessel because the

sentence was less than the maximum of life imprisonment.).  Movant, therefore, is

not entitled to relief in connection with Grounds Four and Eight of the instant

motion.

> 3.   Movant Did Not Receive Ineffective Assistance Of Counsel In Connection With A Minor Role Reduction.

Movant next claims that counsel was ineffective for failing to argue that he

should be granted a reduction in his sentence because he allegedly had only a minor

role in the drug operation.  To the contrary, Ms. Panitch did, in fact, object to the

PSR's finding that Movant was not entitled to a minor role reduction, and the Court

decided the issue adversely to Movant.  (Doc. 175 at 4-7; Doc. 190 at 16-17).

Counsel plainly could not have been deficient for failing to raise an issue that she did, in fact, raise.  Thus, Movant is not entitled to relief on this claim.

4.  Movant's Claim That He Has Diminished Mental Capacity Directly Contradicts His Sworn Testimony.

Movant's next claim is that counsel was ineffective for failing to argue that he has diminished mental capacity.  Throughout the entire § 2255 motion and his reply Movant characterizes himself as "slow-minded" [Doc. 227 at 6, 14, 17], as having "mental disabilities" [*Id.* at 7], "mental slowness" [Doc. 221 at 26], "diminished, slow mental capacity" [Doc. 221 at 25], and a "low and slow mind" [Doc. 227 at 18].  Movant also dedicates nine pages of his §2255 motion (four "stories") describing his alleged mental deficiencies in Spanish.  (Doc. 221 at 31-40).

Although Movant "humbly request[s]" that these stories be translated by a certified and sworn interpreter[,]" this Court has no authority to order any such translation.  Indeed, federal court filings must be made in English, and documents written in another language must be filed with a translation.  *See Light for Life, Inc. v. Our Firm Found. For Koreans, Inc.*, No. 3:12-CV-38-CAR, 2015 WL 631138, at *7 (M.D. Ga. Feb. 12, 2015) ("'[F]ederal court proceedings must be conducted in English.'  Without an English translation, the Court cannot consider this evidence on summary judgment."); *Calderon v. Woodford*, No. 1:07-cv-1719-LJO-YNP PC,

2009 WL 3381035, at *1 (E.D. Cal. Oct. 19, 2009) ("The Court is unaware of any statute authorizing the expenditure of public funds to translate non-English pleadings from indigent, incarcerated plaintiffs."); *United States v. One 1988 Chevrolet Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321, 1329 (S.D. Ala. 2005) (discussing the principle that parties are responsible for providing English translation of their exhibits).

Regardless, the Court asked Movant during the plea colloquy if he suffered from any emotional or mental disability or had ever been under the care of a psychologist or psychiatrist, and Movant replied that he did not and had not. (Doc. 133 at 9). The PSR confirmed that statement, and Movant did not object thereto. (PSR ¶ 67). Moreover, Movant's wife testified at his sentencing hearing and made no mention of any diminished mental capacity from which Movant suffered. (Doc. 190 at 130-31). Movant now claims that the Court should not take what he said during the plea colloquy at face value because he could not have diagnosed his own diminished mental capacity, and that when his wife testified that he was a "good" man, in Latin culture "good" equates to "dumb," "stupid" and an "imbecile." (Doc. 227 at 29-30). These arguments, however, simply strain credulity, and Movant's present conclusory and unsupported allegations of diminished mental capacity are

insufficient to overcome his sworn declarations in Court.  *See Blackledge*, 431 U.S. at 74.

Finally, even if counsel had argued that Movant had such alleged diminished mental capacity, Movant cannot show that the Court would have reduced his sentence.  Indeed, Judge Evans made it clear that she thought the 168 month sentence was appropriate for the purposes of punishment and deterrence, *i.e.,* because Movant was involved in a "serious drug crime" with a "very large amount of drugs;" had that amount of drugs hit the street "it could have done a lot of damage to people;" Movant showed no remorse; and the Court wanted to make a statement to Movant and others that drug trafficking "will not be tolerated."  (Doc. 190 at 33).   Movant has not demonstrated that had his counsel raised any belated issue of diminished mental capacity – which would have contradicted his statements under oath during the plea hearing and potentially further have shown the Court that Movant had no remorse – the sentence would have been different.  Accordingly, Movant is not entitled to relief in connection with Ground Seven.

> 5.   Counsel Was Not Ineffective For Failing To Seek A Reduced Sentence Based On Movant's Conditions of Pretrial Confinement.

Movant argues in Ground Six that counsel was constitutionally ineffective for failing to present evidence of  his "harsh conditions of pretrial confinement."  (Doc.

221 at 13-14).   Movant claims that had counsel done so, Movant would have received a sentence that was shorter by ten to twelve months because the Court previously had granted another defendant such a variance for similarly harsh pretrial conditions.  (*Id.* at 14).

It is true that the Court "may reduce a sentence to account for the harsh conditions of pretrial confinement."  *United States v. Lopez*, 685 F. App'x 861, 862 (11th Cir. 2017) (internal quotation marks omitted).  And counsel did, in fact, argue to the Court that Movant's conditions of pretrial confinement – including being on 23 hours of lockdown a day, being allowed to shower only a few times a week, and having limited communication with others – warranted a lower sentence.  (Doc. 175 at 12-13; Doc. 190 at 29).  Despite counsel's argument, however, the Court did not reduce Movant's sentence.

Movant appears to argue that counsel should have called him as a witness to testify about the harsh conditions, and/or that counsel could have obtained records and reports from USP-Atlanta to support his claim that he suffered such harsh pretrial conditions.  (Doc. 227 at 24).  As the Government points out, the Court already found Movant was not credible; therefore, it is difficult to surmise what difference it would have made had counsel sought his testimony in this regard.  And, as discussed previously in Section III.B.4, Judge Evans made it clear that she wanted

to send a message with the sentence she imposed.  Movant, therefore, has failed to demonstrate how his testimony or any other supporting evidence would have changed the Court's decision not to reduce Movant's sentence based on harsh pretrial conditions.  Accordingly, Movant is not entitled to relief in connection with this claim.

III.   <u>Conclusion</u>

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Javier Munoz-Ruiz's motion to vacate his sentence [Doc. 221] be **DENIED WITH PREJUDICE**.

IV.   <u>Certificate Of Appealability</u>

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere

28

'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated that he received ineffective assistance of counsel. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 28th day of June, 2019.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE